UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY BARKOVIC,

        Plaintiff,

v.

        Case Number 17-10281
        Honorable David M. Lawson

ATTORNEY GRIEVANCE COMMISSION,
ALAN GERSHEL, ROBERT EDICK,
KIMBERLY UHURU, RUTHANN STEVENS,
JOHN DOE, STATE BAR OF MICHIGAN,
CLIFFORD FLOOD, JANE DOE, DAWN
EVANS, JOHN VAN BOLT, MARK
ARMITAGE, MARILYN KELLY, MICHAEL F.
CAVANAGH, MAURA D. CORRIGAN,
ROBERT P. YOUNG, JR., STEPHEN J.
MARKMAN, DIANE M. HATHAWAY, BRIAN
ZAHARA, BRIDGET MARY MCCORMACK,
DAVID VIVIANO, RICHARD BERNSTEIN,
and JOAN LARSEN,

        Defendants,
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND DISMISSING AMENDED COMPLAINT

Plaintiff Timothy Barkovic was a Michigan attorney from 1979 until he surrendered his law license on December 1, 2015. Barkovic apparently had several brushes over the years with Michigan's attorney discipline system. He contends that his resignation (which apparently was the culmination of his latest disciplinary prosecution) was the product of a flawed state bar rule that unconstitutionally restricted speech, coupled with conspiratorial actions by some of the defendants to prosecute him under that rule in retaliation for his criticism of certain courts, judges, and state bar officials. In his five-count amended complaint, Barkovic seeks money damages against several current and former justices of Michigan's supreme court, the Michigan Attorney Grievance

Commission and its employees, the Michigan Attorney Discipline Board (ADB) and its employees, and some of the functionaries of the State Bar of Michigan. The various defendants have moved to dismiss on jurisdictional and immunity grounds, and for the failure to state a cognizable claim. Through some of their arguments, they have demonstrated that Barkovic's claims cannot advance. Therefore, the motions to dismiss will be granted and the amended complaint will be dismissed.

I.

The following fact summary is taken from Barkovic's amended complaint. Barkovic became a licensed attorney in Michigan on May 16, 1979. He acknowledges that as an attorney, he was subject to the Michigan Rules of Professional Conduct (MRPC). One of those rules, MRPC 6.5, requires lawyers to "treat with courtesy and respect all persons involved in the legal process." Barkovic alleges that he has been disciplined several times for violating that rule because of comments that he has made. He contends that Rule 6.5 violates the First and Fourteenth Amendments, because the rule is vague and it "chills" his right to speak freely. He contends that the rule had "infringed on his ability to effectively advocate on behalf of his (prior) clients." Am. Compl. ¶ 29.

Barkovic contends that the "defendants" used the state bar grievance machinery to threaten and harass him over the years because of his advocacy style. He has been sanctioned for professional misconduct, and he professes an apprehension that results from his confusion over the vague and imprecise boundaries drawn by Rule 6.5, not knowing when he might cross the line into forbidden territory. He says his punishments have been cumulative, which caused him to believe that the state bar authorities were angling to disbar him. Because he "could not tolerate such a

sanction," Barkovic alleges that he resigned from the state bar under duress when confronted with the last formal complaint made against him.

The amended complaint contains five counts. Although there are a few specific allegations, Barkovic generally has painted with a broad brush. The title of count one states that Barkovic seeks redress for "violation of plaintiff's First Amendment and Fourteenth Amendment Rights." The thrust of that count is that state bar disciplinary officials punished him for violating Rule 6.5, which Barkovic contends has been declared "unconstitutional by this court." He says that state court precedent prohibited him from raising a constitutional challenge during bar disciplinary proceedings, so he was deprived of his constitutional rights.

In count two, Barkovic alleges that the "defendants," acting under color of state law, conspired to deprive him of his constitutional rights. This claim appears to be based on three incidents. The first one Barkovic listed arose from the surrender of his law license. He makes reference to a letter he wrote on December 1, 2015, which he characterizes as his "official resignation." He alleges that he submitted that letter subject to an agreement that it would not be effective for 90 days, so he could wind down his law practice and transition his clients. Attorney grievance counsel Kimberly Uhuru jumped the gun on Barkovic's removal from the attorney rolls, he says, by immediately contacting courts throughout the state to assert his ineligibility. That resulted in a judge removing Barkovic from the defense of a criminal client in the midst of a trial on December 8, 2015.

The second incident occurred in August 2011, when Barkovic requested a formal ethics opinion from the state bar on the interpretation of Rule 6.5. State bar associate counsel Dawn Evans declined the request after contacting the Attorney Grievance Commission and learning of a pending

investigation involving Barkovic. Evans told Barkovic that his request lacked sufficient facts to allow her to render an opinion, but Barkovic alleges that excuse was a pretext for the conspiracy.

The third incident involved state bar general counsel Clifford Flood, who contacted Barkovic's attorney in February 2016, informing him that Barkovic was ineligible to practice law because he did not pay his state bar dues.

In count three, Barkovic alleges that the "defendants," although he does not specify which ones, retaliated against him for exercising his First Amendment rights. The general nature of the retaliation alleged appears to be the uneven application of the rules of professional conduct to other Michigan attorneys who, Barkovic alleges, engaged in conduct that was at least as egregious as his own. He alleges that the grievance administrator employees' refusal to pursue those charges against other attorneys is further evidence of a conspiracy to single him out and punish him for his speech.

Count four, titled "Violation of Substantive and Procedural Due Process," is directed at an apparent feature of the Michigan attorney discipline system, which prevents a respondent from raising a constitutional challenge to the governing rules. Barkovic contends that he was the subject of "several formal complaints," and that his effort to mount a constitutional challenge during those proceedings was stymied by those procedural rules.

In count five, Barkovic contends that the "defendants," once again without stating which ones, "engage[d] in a course of conduct, involving selective, vindictive and bad faith prosecutions" of him for professional misconduct. He says that those prosecutions were motivated by ethics complaints that Barkovic himself had made against Attorney Grievance Commission agents and employees, and for lawsuits he filed against them.

The three groups of defendants filed motions to dismiss. The Attorney Discipline Board and judicial defendants argue that all of the plaintiff's claims are barred on jurisdictional and immunity grounds. The state bar defendants raise similar issues and add that claim and issue preclusion prevent Barkovic from moving forward on his claims. They also attack the amended complaint on its paucity of specific facts to support the plaintiff's broad, conclusory allegations. The Attorney Grievance Commission defendants echo those arguments.

II.

The several defendants have brought their motions under Federal Rules of Civil Procedure 12(b)(1) (alleging a lack of subject matter jurisdiction) and 12(b)(6) (alleging the failure to state a claim). "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). "A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis," but "[a] factual attack challenges the factual existence of subject matter jurisdiction." *Ibid.* The defendants here mount a facial attack based on two grounds. They contend that because the amended complaint essentially amounts to an appeal of the bar disciplinary proceedings, the Court has no subject matter jurisdiction under the *Rooker-Feldman* doctrine. They also argue that the claims for money damages against the state defendants are barred by the Eleventh Amendment.

A.

The *Rooker-Feldman* doctrine, named after the decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), prohibits lower federal courts from exercising "appellate jurisdiction over the decisions and/or proceedings of state courts, including claims that are 'inextricably intertwined' with issues decided in state court proceedings." *Exec. Arts Studio, Inc., v. City of Grand Rapids*, 391 F.3d 783, 793 (6th Cir. 2004) (citations omitted). The doctrine is based on the limitation of federal appellate jurisdiction over state court decisions, which is confined to the Supreme Court under 28 U.S.C. § 1257. Therefore, federal district courts lack subject matter jurisdiction to review such matters. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005) ("[T]his Court's appellate jurisdiction over state-court judgments . . . precludes a United States district court from exercising subject-matter jurisdiction."); *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008) ("The *Rooker-Feldman* doctrine is based on the negative inference that, if appellate court review of such state judgments is vested in the Supreme Court, then it follows that such review may not be had in the lower federal courts.").

The Sixth Circuit applied that doctrine to the review of state bar disciplinary proceedings in *In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009) (stating that "the *Rooker-Feldman* doctrine . . . precludes review of any claims arising directly out of [a plaintiff's] state disbarment proceedings or [a state] Supreme Court's disbarment order"); *see also Saier v. State Bar of Michigan*, 293 F.2d 756, 759 (6th Cir. 1961) (holding that federal courts do not sit in review of state bar disciplinary proceedings).

The problem applying the *Rooker-Feldman* doctrine here is that the amended complaint at once says both too little and too much. Aside from his reference to the formal proceeding that ended with the surrender of his law license, Barkovic does not mention any specific disciplinary proceeding in the amended complaint. He did not attach any of the formal complaints, opinions, or orders that contained allegations of misconduct. (The defendants, helpfully, have tried to fill that gap by attaching multiple exhibits to their motion. More on that later.). And he has not asked that any of the discipline imposed be altered in any way. It is hard to say, therefore, that the amended complaint amounts to an attempt to appeal the results of the disciplinary proceedings.

On the other hand, Barkovic appears to allege that *all* the disciplinary proceedings over the years were tainted because they all sought to impose sanctions under the allegedly unconstitutional Rule 6.5. And he says that state procedures prevented him from challenging the validity of that rule at the agency level. That last point is correct. The Michigan Supreme Court has held that the ADB does not have the authority to invalidate rules of professional conduct, which are adopted by the state supreme court. *Grievance Adm'r v. Fieger*, 476 Mich. 231, 253, 719 N.W.2d 123, 138 (2006). That does not immunize the rules from a constitutional challenge within the state judicial system, however. A lawyer who wishes to mount such a challenge may present it to the supreme court on appeal of his disciplinary proceedings. *Id.* at 254, 719 N.W.2d at 138-39 ("Should any attorney appearing before the ADB believe a rule itself to be unconstitutional, such as in this case, resort must be made to an appeal to this Court, and, if we concur in this assessment, it is our responsibility to declare such rule unconstitutional."). It does not appear that Barkovic ever availed himself of that avenue to challenge Rule 6.5 in any of his discipline cases.

Barkovic's global attack on the attorney discipline process can be read as a collateral attack on *each* of his adjudications in which a violation of Rule 6.5 was alleged. Those attacks are foreclosed by the *Rooker-Feldman* doctrine. *Cook*, 551 F.3d at 548 (holding that an attorney "cannot seek collateral review of her state disbarment proceedings in federal court"). Barkovic's challenges to the constitutionality of Rule 6.5 as applied to him, therefore, must fail as an attempt to seek review that is beyond the judicial power of this Court. The claims in counts one (alleging that his prior discipline cases improperly applied an unconstitutional rule, and that the agency's lack of authority to entertain such an argument denied him due process) and four (that the same procedural limitation violated his rights under the Due Process Clause) of the amended complaint must be dismissed.

B.

Barkovic has named as defendants the Michigan Attorney Grievance Commission, the State Bar of Michigan, and the Michigan Attorney Discipline Board. He also named as defendants several current and former justices of the Michigan Supreme Court in their official capacities. He has pleaded various legal theories against them, but the common relief requested against those defendants is money damages. Those defendants, in turn, argue that the Court has no jurisdiction to render such a judgment because they enjoy immunity under the Eleventh Amendment.

The Eleventh Amendment to the Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Supreme Court has extended that proscription to bar suits by a citizen against his or her own state, as well. *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974) (holding that "an unconsenting

State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State") (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). And as to the scope of immunity afforded by the Amendment, the Court has declared "that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The Eleventh Amendment also bars civil rights actions for money damages against state employees sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

There are three exceptions to Eleventh Amendment immunity: 1) when the state has waived its immunity by consenting to the lawsuit; (2) when Congress has abrogated the state's sovereign immunity, and (3) when the plaintiff seeks only prospective injunctive relief against a state official from violating federal law. *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017) (citing cases). None of those exceptions applies here. The claims against the state entities (the State Bar, the AGC, and the ADB), and the official capacity claims against the state supreme court justices, therefore, must be dismissed for want of subject matter jurisdiction.

Although the state justices are named in the amended complaint's caption only in their official capacities, there is language in the body of the amended complaint that refers to them "in their individual *and* official capacities." Am. Compl. ¶ 5 (emphasis added). However, that sole allegation states that they are responsible for enacting and implementing the MRPCs, and seeing that those rules are carried out in the attorney discipline system in Michigan. There are no other allegations in the amended complaint directed against the justices. And there are no pleaded facts that suggest that any of the justices played a role in any of Barkovic's disciplinary proceedings.

Barkovic is obliged to provide clear notice to state defendants if he intends to sue them individually. *Moore v. City of Harriman*, 272 F.3d 769, 773 (6th Cir. 2001) (en banc) (stating that a plaintiff "must clearly notify defendants of the potential for individual liability and must clearly notify the court of its basis for jurisdiction"). If he fails to do so in the complaint, the Court must "look to the course of proceedings" to make the capacity determination. *Ibid.* The individual justices plainly had no authority to enact state bar rules individually. The only sensible reading of the amended complaint is a construction that limits the grievance to an official capacity allegation. And as such, the claims are barred by the Eleventh Amendment. *Will*, 491 U.S. at 71.

The same can be said of the ADB defendants, John Van Bolt (past ADB director) and Mark Armitage (current director). The only allegation directed to them by name is that they worked for the ADB, which is charged with the responsibility to supervise and discipline Michigan attorneys. Barkovic has not alleged that Van Bolt or Armitage was involved in any of Barkovic's discipline cases or ever participated in adjudicating any claims against him. Because there are no allegations of any discrete conduct by them, the only logical conclusion is that the claims stated in the amended complaint directed to those defendants are official capacity claims.

The Eleventh Amendment bars the claims against the justices and the ADB defendants. Therefore, the amended complaint will be dismissed against them in its entirety.

III.

The state bar defendants and the AGC defendants also argue that the amended complaint fails to state a claim against them for which relief can be granted, relying on Federal Rule of Civil Procedure 12(b)(6). The standards under that rule are well known to the parties: the purpose of the motion is to allow a defendant to test whether, as a matter of law, the plaintiffs are entitled to legal

-10-

relief if all the factual allegations in the complaint are taken as true. *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). The complaint is viewed in the light most favorable to the plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiffs. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). To survive the motion, the plaintiffs "must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007). Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief. *Ashcroft v. Iqbal*, [556 U.S. 662, 678] (2009)." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010).

The defendants have attached several exhibits to their motions. But when deciding a motion under Rule 12(b)(6), the Court looks only to the pleadings, *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008), the documents attached to them, *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)), documents referenced in the pleadings that are "integral to the claims," *id.* at 335-36, and documents that are not mentioned specifically but which govern the plaintiff's rights and are necessarily incorporated by reference, *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Solerne, N.A.*, 534 U.S. 596 (2002). However, beyond that, assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).

Barkovic did not attach any documents to his amended complaint. In count two, he made specific reference to his resignation letter and to the agreement that generated it, which was part of

his last disciplinary proceeding. Those two documents are fair game for consideration of the defendants' motions. The remaining exhibits, however, do not fall within the allowable categories of extraneous matter that may play a role in adjudicating a Rule 12(b)(6) motion without converting it into a summary judgment motion under Rule 56. Conversion is not appropriate here, so the Court will disregard the other exhibits.

A.

Count two alleges that certain state bar and AGC defendants conspired to deprive the plaintiff of his constitutional rights. This claim is based on 42 U.S.C. §§ 1983 and 1985. "To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)). The plaintiff must establish the liability of each individual defendant by that person's own conduct. "Because vicarious liability is inapplicable [in] § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The same requirement applies to claims under section 1985. "[U]nder 1985, a plaintiff must plead his civil rights conspiracy charge with factual specificity; mere conclusory allegations will not survive a motion to dismiss." *Ashiegbu v. Purviance*, 76 F. Supp. 2d 824, 830 (S.D. Ohio 1998); *see also Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987) ("It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983."); *Nielson*

*v. Legacy Health Systems*, 230 F. Supp. 2d 1206 (D. Or. 2001) (dismissing a complaint because the plaintiff did not provide specific factual allegations with respect to each of the defendants' acts which led him to believe there was a conspiracy).

A civil conspiracy is "'an agreement between two or more persons to injure another by unlawful action.'" *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)). To state a claim of conspiracy under section 1985, the plaintiff must allege the following elements: (1) that a single plan existed; (2) that the alleged conspirators shared in the general conspiratorial objective to deprive the plaintiff of his constitutional or federal statutory rights; and (3) that an overt act was committed in furtherance of the conspiracy that caused injury. *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985).

The plaintiff's conspiracy theory is based on three discrete incidents that do not appear to be associated factually or temporally. The first is the allegation that AGC attorney Kimberly Uhuru contacted Michigan courts shortly after December 1, 2015 to report that Barkovic no longer was authorized to practice law. Barkovic says that violated the agreement he made to terminate his last discipline proceeding. The stipulation to dismiss the formal complaint in that case, signed by Barkovic on August 21, 2015, states that Barkovic would submit a letter resigning from the State Bar of Michigan "[w]ithin 7 days of the issuance of the order of dismissal" of the formal complaint. Def. AGC's Mot. Dismiss, Ex. 4 (Page ID 149). It also states that the resignation "shall be effective 90 days from the date of the order of dismissal." *Ibid*. The order dismissing the formal complaint is time-stamped November 15, 2015, and presumably was dated that same day. Def. AGC's Mot. Dismiss, Ex. 6 (Page ID 154). It stated that Barkovic's "resignation shall be effective 90 days from the date of this order." *Ibid.* That would have given Barkovic until mid-February 2016 to wind

down his practice, if he chose to take all the time allowed. Under that view of the documents, Uhuru's actions would have been premature.

However, Barkovic submitted an actual letter of resignation on December 1, 2015, which stated explicitly that his resignation was "effective immediately." Def. AGC's Mot. Dismiss, Ex. 3 (Page ID 148). The legal effect of that declaration is not clear. Under Michigan State Bar rules, a resignation becomes effective when the state bar secretary "notif[ies] the member when the request is accepted." Mich. State Bar Rule 3(E). Nothing in this record indicates when Barkovic was notified that his resignation was accepted. But it is apparent that Barkovic plainly was surprised when he was removed from the defense of a criminal client mid-trial.

The other two incidents are more prosaic. Barkovic says that in August 11, 2011, state bar counsel Dawn Evans declined to provide him with an ethics opinion of the reach of Rule 6.5, and that in February 2016, state bar general counsel Clifford Flood told Barkovic's attorney that Barkovic could not practice law because he had not paid his state bar dues. Barkovic does not allege that Flood was incorrect.

The conspiracy count in the amended complaint is premised on the idea that Rule 6.5 was declared unconstitutional by another judge in this district, and that these overt acts by Uhuru, Evans, and Flood demonstrate an agreement to violate Barkovic's First Amendment right to advocate freely despite the strictures of Rule 6.5. The flaw in that argument is that the opinion and order declaring Rule 6.5 unconstitutional was vacated by the Sixth Circuit. *Fieger v. Mich. Sup. Ct.*, No.06-11684, 2007 WL 2571975 (E.D. Mich. Sept. 4, 2007), *vacated*, 553 F.3d 955 (6th Cir. 2009). "[A] decision that has been *vacated* has no precedential authority whatsoever." *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1424 n.2 (9th Cir. 1991) (citing *O'Connor v. Donaldson*, 422 U.S. 563, 578 n.2 (1975).

The allegations in the amended complaint, therefore, fall short of establishing a plausible claim that the named actors had hatched a single plan to deprive Barkovic of his rights under the First Amendment. The amended complaint's allegations support the conclusion that Uhuru acted wrongfully. But the gap between her alleged actions and a general conspiratorial objective to deprive Barkovic of First Amendment rights is too wide to be bridged by the remaining allegation in count two. The pleading does not identify any other alleged conspirators by name or describe any other specific conduct. That leaves the plaintiff's conclusory allegations, which fall short of a plausible claim for relief. *Iqbal*, 556 U.S. at 678.

Count two, therefore, must be dismissed for failure to state a claim for which relief can be granted.

B.

The lack of specificity dooms count three as well. The plaintiff alleges that unspecified defendants retaliated against him for exercising his First Amendment rights while advocating for clients by enforcing Rule 6.5 against him. To establish a retaliation claim, the plaintiff must plead these elements: "(1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; [and] (3) there is a causal connection between elements one and two — that is, the adverse action was motivated at least in part by his protected conduct." *Wenk v. O'Reilly*, 783 F.3d 585, 593 (6th Cir. 2015) (quoting *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012)).

The plaintiff has not alleged in any detail the conduct that he contends was protected. Protected conduct includes those actions taken pursuant to "individual rights with which the

government generally cannot interfere." *Thaddeus-X v. Blatter*, 175 F.3d 378, 387 (6th Cir.1999). Barkovic refers to his advocacy on behalf of clients, but he does not allege what he said, when he said it, or the context in which his comments were made. He has not made reference to any specific disciplinary proceedings from which those facts could be extracted. He says his conduct did not violate Rule 6.5, or if it did, the "defendants" selectively enforced that rule against him. But without more factual development, there is no way of knowing if the plaintiff's conduct was protected by the First Amendment.

As note above, there is no binding opinion by a federal or Michigan court holding that Rule 6.5 is unconstitutional. *See Fieger*, 553 F.3d at 957. The Michigan Supreme Court has limited the reach of Rule 6.5, stating that "MRPC 6.5(a) w[as] not designed to 'silence,' 'censor,' or 'prohibit criticism'; rather, the provisions were intended to prohibit only 'undignified,' 'discourteous,' and 'disrespectful' conduct or remarks." *Id.* at 959 (quoting *Grievance Adm'r v. Fieger*, 476 Mich. at 246, 719 N.W.2d at 135). Barkovic alleges (conclusorily) that he engaged in protected speech, Rule 6.5 notwithstanding. The absence of specifics, however, complicates the task of determining whether that is a plausible allegation.

Barkovic did include a catalog of incidents, which he contended were either the cause or the motivation for retaliation. *See* Am. Compl. ¶ 81. It is not clear, however, how those incidents fit into the retaliation scheme alleged. For instance, Barkovic alleges that he filed a grievance against Deputy AGC Administrator Robert Edick for calling the plaintiff a "jerk," and the supreme court justices failed to take any action on that complaint. But there is no argument that such inaction constituted adverse action, or that causally connect that inaction to any protected conduct. Barkovic also alleges that he has made complaints against other lawyers for acting uncivilly, and no action

was taken against them. But once again, there are no additional pleaded facts that support an inference that the inaction amounted to retaliation for the plaintiff's unspecified protected conduct.

Finally, there are allegations in count three that employees of the AGC were never punished when their alleged misconduct was exposed by former AGC Administrator Robert Agacinski. The plaintiff alleges that Agacinski's charges were swept under the rug. But there is no logical connection that is apparent from the amended complaint between that activity and the plaintiff's protected conduct.

Count three does not contain "enough factual matter that, when taken as true, state[s] a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 556, 570 (internal quotation marks and citations omitted). That count, therefore, must be dismissed for failure to state a claim.

C.

Count five alleges selective prosecution. This claim reads like the retaliation count, and with good reason. Under the Supreme Court's "selective prosecution doctrine, 'the decision to prosecute may not be deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, including the exercise of protected statutory and constitutional rights.'" *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 497 (1999) (Ginsburg, J., concurring in part and concurring in the judgment) (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)). Barkovic ties the decisions to prosecute him for violations of the rules of attorney conduct to his own complaints of professional misconduct against AGC personnel and his lawsuits apparently brought against "the defendants." Once again, however, no specific facts are alleged to describe the protected conduct or the connection between that and disciplinary charges brought against Barkovic. For that reason, and those discussed above, count five fails to state a plausible claim.

IV.

Barkovic contends that his resignation from the Michigan bar was made under duress. A federal district court, however, is not the proper place to relitigate that question. Many of the defendants are immune from suit under the Eleventh Amendment, and the allegations in the complaint do not measure up to the *Iqbal/Twombly* requirements of plausibility.

Accordingly, it is **ORDERED** that the defendants' motions to dismiss [dkt. #9, 10, 13] are **GRANTED**.

It is further **ORDERED** that the amended complaint is **DISMISSED WITH PREJUDICE**.

                                                 s/David M. Lawson
                                                 DAVID M. LAWSON
                                                 United States District Judge

Dated: December 22, 2017

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 22, 2017.

                                    s/Susan Pinkowski
                                    SUSAN PINKOWSKI